UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KEVIN TARVER | § |
| | § |
| v. | § CIVIL ACTION NO. 4:21-CV-970 |
| | § |
| CITY OF DENTON, TEXAS, ET AL. | § |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Tarver, Administrator of the Estate of Darius Tarver ("Tarver"), brings this 42 U.S.C. § 1983 action arising from the death of Darius Tarver during an encounter with City of Denton, Texas, police officers Michael Hernandez and Doug Downing (collectively, "Officers").[1] Tarver has sued the Officers and the City of Denton, alleging that the Officers violated Darius's Fourth Amendment rights and that the City is liable for the alleged constitutional violation because of its failure to train its police officers properly.

Before the Court are Federal Rule of Civil Procedure 12(b)(6) dismissal motions submitted by both the City, (Dkt. #10), and the Officers, (Dkt. #11). For the reasons that follow, the Court concludes that the City's motion must be **GRANTED** and that a ruling on the Officers' motion will be deferred pending Tarver's submission of a reply under Federal Rule of Civil Procedure 7(a) to the Officers' assertions of qualified immunity in their answer to Tarver's amended complaint.

---

[1] Because Plaintiff Kevin Tarver and decedent Darius Tarver share the same last name, the Court will sometimes refer to Darius Tarver by his first name.

1

## I. BACKGROUND

Tarver's Amended Complaint describes the following circumstances surrounding the death of Darius Tarver in January 2020. At that time, Darius was a 23-year-old young man enrolled as a student at the University of North Texas. In the days leading up to January 21, 2020, Darius was involved in a motor vehicle accident that resulted in a head injury and "a trip to the hospital." (Dkt. #5 ¶ 17). Following his release from the hospital, Darius began acting "strangely" and "saying things that did not make sense." (Dkt. #5 ¶ 18). On January 21, 2020, Darius's roommate called 911 to request medical assistance for Darius. Denton Police Officers Hernandez, Downing, Latrice Pettaway, and Ryan Spivey responded to the call.

When the police officers arrived at Darius's apartment building, they encountered Darius as he was descending an external stairwell. Darius was "holding a frying pan in his left hand," and his right hand was empty. (Dkt. #5 ¶ 23). Darius was "speaking incoherently about God." (Dkt. #5 ¶ 24). As Darius "slowly descended the steps," Hernandez and Downing "yelled at him." (Dkt. #5 ¶ 25). Darius did not respond and continued "muttering incoherently." (Dkt. #5 ¶ 26). He then stopped at the bottom of the staircase, more than fifteen feet away from the nearest officer. Darius then "stood stationary for 28 seconds with his arms at his side and fully visible to [Hernandez and Downing]." (Dkt. #5 ¶ 28). At that point, Hernandez allegedly fired his taser at Darius "without reason or warning." (Dkt. #5 ¶ 30). The taser hit Darius in the chest, and Darius began "involuntarily convulsing and jumping around." (Dkt. #5 ¶ 31). As Darius was convulsing, Downing shot Darius.

Darius fell to the ground after Downing shot him, and a knife fell out of his pants. One of the police officers kicked the knife away. Darius got up, and one of the officers tased him again. Darius "tried to resist the unlawful assault," (Dkt. #5 ¶ 35), and Downing shot him at least two more times. Darius passed away as a result of his encounter with the police officers.

Tarver brought this lawsuit under Section 1983, asserting claims for violations of Darius's Fourth Amendment rights and for municipal liability. The Officers moved to dismiss for failure to state a claim and on qualified immunity grounds. The City of Denton also moved to dismiss, arguing that there is no basis for municipal liability. In addition to filing a dismissal motion, the Officers have filed an answer to Tarver's amended complaint, which includes detailed allegations supporting their assertion of qualified immunity.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* To determine whether the plaintiff has

pleaded enough to "nudge[] [his] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (second alteration in original) (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When, as here, a defendant asserts a qualified immunity defense in a motion to dismiss, the Court has an "obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

### III. DISCUSSION

The Officers move to dismiss the Fourth Amendment claim against them, arguing that Tarver fails to state a claim and that, regardless, they are entitled to qualified immunity. The City of Denton also moves to dismiss, arguing that Tarver has not stated a claim for municipal liability. The Court first considers the Officers' motion and then determines whether Tarver has stated a plausible claim for relief against the City.

**A. Hernandez and Downing's Motion**

Qualified immunity is a court-created doctrine that limits when state officials may be sued in their individual capacities for alleged constitutional violations. The doctrine "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088,

4

182 L.Ed.2d 985 (2012). As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), so courts will not deny immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

A plaintiff seeking to defeat qualified immunity must show (1) that the official violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was "clearly established" at the time. *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021). In doing so, courts must "assess the reasonableness of each defendant's actions separately." *Pratt v. Harris County*, 822 F.3d 174, 181 (5th Cir. 2016).

Although a plaintiff is not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings, *Crawford–El v. Britton*, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), a plaintiff may be required to "engage the affirmative defense of qualified immunity when invoked," *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc). "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on

the official's motion or on its own, require the plaintiff to reply to that defense in detail" under Rule 7(a). *Schultea*, 47 F.3d at 1432–33; *see also* FED. R. CIV. P. 7(a). As the Fifth Circuit has admonished, "[f]aced with sparse details of claimed wrongdoing by officials, trial courts ought routinely [to] require plaintiffs to file a reply under [Rule 7(a)] to qualified immunity defenses." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). And a court's discretion not to order a reply is "very narrow . . . when greater detail might assist." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). The reply must be "tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1433.

Here, the Officers' answer asserts their entitlement to qualified immunity and includes a description of the circumstances surrounding Darius's death that both provides significantly more detail than and differs substantially from Tarver's account. The Court concludes that a Rule 7(a) reply is necessary in this case and therefore orders that, within thirty days of the entry of this memorandum opinion and order, Tarver must file a Rule 7(a) reply that is tailored to and fairly engages the immunity allegations of the Officers, and that alleges with particularity all material facts that Tarver contends establish a right to recover against the Officers under Section 1983. *See Schultea*, 47 F.3d at 1432–33; *see also Lewis v. Moore*, No. 3:09-CV-1720, 2011 WL 1119757, at *2 (N.D. Tex. Mar. 24, 2011) (ordering Rule 7(a) reply where the plaintiff's allegations were at odds with the police officer's response and did not directly address how the police officer's actions were objectively unreasonable in light of clearly established law).

6

After Tarver files his Rule 7(a) reply, the Officers may file a supplemental brief in support of their motion to dismiss. Any such brief must be filed no later than fourteen days after Tarver's Rule 7(a) reply, and the supplemental brief may not exceed fifteen pages without leave of court. Tarver may file a response to any supplemental brief filed by the Officers. Tarver's response must be filed within fourteen days of the filing of the Officers' supplemental brief and may not exceed fifteen pages without leave of court. The Officers may then file a reply brief within seven days of the filing of Tarver's response. The Officers' reply brief may not exceed five pages without leave of court.

### B. The City of Denton's Motion

The City of Denton asserts two bases for dismissal of the claims against it: (1) the amended complaint fails to plead a constitutional deprivation; and (2) the amended complaint fails to plead a claim for municipal liability. For the reasons stated above, *see supra* Part III.A, the Court defers ruling on whether Tarver has pleaded a constitutional deprivation at this time. However, because Tarver has not adequately pleaded a claim for municipal liability regardless of whether a constitutional deprivation occurred, the Court will assume arguendo that Tarver has adequately pleaded a constitutional deprivation.

A municipality is a "person" subject to liability under Section 1983 for violating an individual's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted because of an official policy or custom,

*Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

As to the first element of municipal liability, a policy's existence "can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542. Although "[a] single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable," this "single incident exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (cleaned up). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quotation omitted). A plaintiff's allegations about the policy or custom cannot be conclusory; they must contain specific facts showing the existence of such policy or custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Tarver does not plead the existence of an official policy but relies instead on an alleged failure to train.[2] Specifically, he states that "the Denton Police Department

---

[2] The amended complaint is vague as to the basis for municipal liability. Tarver alleges that the City of Denton "failed to properly train, supervise, screen, discipline, transfer,

has failed to properly train its officers that they may not fire their taser at an individual who is no threat to the officers or others." (Dkt. #5 ¶ 38); *see also* (Dkt. #20 at 8 ("Plaintiff's basis for municipal liability sounds in the knowledge that officers were engaging in constitutional violations stemming from the use of tasers on unthreatening individuals and the failure of the City to take any steps to improve the training.")).

A failure-to-train claim is a species of *Monell* liability. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* (quotation omitted). To proceed beyond the pleading stage, a plaintiff must plausibly allege that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (quotation omitted).

### i. Failure to train the officers involved

The first element of a failure-to-train claim requires the plaintiff to "identify specific deficiencies in the City's training procedures." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017); *see also Hutcheson*, 994 F.3d at 482 ("In failure-to-train

---

counsel, or otherwise properly equip and control officers." (Dkt. #5 ¶ 5). Because the factual allegations in the amended complaint only support a failure to train claim, *see* (Dkt. #5 ¶¶ 37–43), and because Tarver only raises a failure to train claim in his response to the City's motion to dismiss, *see* (Dkt. #20 at 8), the Court presumes that the sole basis for Tarver's municipal liability claim is an alleged failure to train. To the extent Tarver intends to rely on any of the other bases, the Court finds that his pleadings are too conclusory to state a claim.

9

cases, defects in a particular training program must be specifically alleged." (cleaned up)). Here, the only specific deficiency identified by Tarver is that the Denton Police Department has failed to properly train its officers that they may not fire their tasers at an unthreatening individual. *See* (Dkt. #5 ¶ 38). As such, the Court finds that this deficiency is the only plausible basis for Tarver's failure-to-train claim.[3]

### ii. Causal connection

Because Tarver's failure-to-train claim is premised on training on the use of tasers, there is no causal connection between the alleged failure to train and the alleged violation of Darius's rights by Downing. However, there is a connection between the failure to train and the alleged violation of Darius's rights by Hernandez, as Tarver alleges that Hernandez used his taser on Darius even though Darius was not threatening anyone.

### iii. Deliberate indifference

Tarver's failure-to-train claim fails, however, at the final element. "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which a "showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547 (quotations omitted). To establish deliberate indifference, a plaintiff ordinarily must allege a "pattern of similar constitutional violations by untrained employees."

---

[3] The Court is skeptical as to whether this allegation establishes the first element, as it does not include "facts related to the locality's actual training program," "the content of the [relevant] training[,] or how thorough or cursory it may have been." *Speck v. Wiginton*, 606 F.App'x 733, 736 (5th Cir. 2015) (per curiam). Because Tarver's claim fails at the third element regardless, the Court will assume without deciding that the first element is satisfied.

*Hutcheson*, 994 F.3d at 482 (quotation omitted). But where such a pattern does not exist, it is still possible for a plaintiff to establish deliberate indifference through the single-incident exception. *Id.*

Tarver only provides one example of an allegedly similar incident in the past seven years, which does not establish a pattern of similar constitutional violations. *See Prince v. Curry*, 423 F.App'x 447, 451 (5th Cir. 2011) (finding that the existence of one or two prior incidents did not indicate deliberate indifference); *Scott v. White*, No. 1:16-CV-1287, 2018 WL 2014093, at *9 (W.D. Tex. Apr. 30, 2018) ("Three incidents in four years is insufficient to plausibly allege a training or supervision failure that would make it obvious that any one officer would be a highly predictable risk to use excessive force.").

In the absence of a pattern, Tarver must rely on the single-incident exception. The single-incident exception is "extremely narrow" and requires the plaintiff to "prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Hutcheson*, 994 F.3d at 482 (quotation omitted). For the consequence to be highly predictable, the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018) (cleaned up). The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Hutcheson*, 994 F.3d at 483 (quotation omitted).

Here, Tarver does not allege that the Officers were provided no training whatsoever on the use of tasers. And in Tarver's response to the motion to dismiss, he indicates that the City failed to "make appropriate changes to the training given to officers on the use of tasers," (Dkt. #20 at 7), or to "improve the training," (Dkt. #20 at 8). These arguments further undercut any inference that the City provided no training on the use of tasers. Because Tarver does not allege that the City provided no training on the acceptable use of tasers, his allegations fail to meet the exacting standard for the narrow single-incident exception. *See Peña*, 879 F.3d at 623–24 (finding no failure to train where the plaintiff alleged that officers were not trained on the legal use of force and non-lethal weapons but acknowledged that the officers received some taser training).

Tarver's allegations do not permit the Court to draw the reasonable inference that the City of Denton was deliberately indifferent to Darius's constitutional rights. The Court therefore dismisses Tarver's failure-to-train claim.

## IV. Conclusion

For the foregoing reasons, the City of Denton's Motion to Dismiss, (Dkt. #10), is **GRANTED**. It is therefore **ORDERED** that all claims against the City of Denton are **DISMISSED with prejudice**.

The Court defers ruling on Hernandez and Downing's Motion to Dismiss. (Dkt. #11). It is **ORDERED** that Tarver must file a Rule 7(a) reply, and the parties are permitted to file supplemental briefing on the motion to dismiss, adhering to the schedule set forth above. *See supra* Part III.A.

It is finally **ORDERED** that all proceedings in this case, except for Tarver's Rule 7(a) reply and the parties' supplemental briefing on the Officers' motion to dismiss, are hereby **STAYED** until further order of the Court.

**So ORDERED and SIGNED this 30th day of September, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE